**MATERIALS MARKETING CORPORATION,**
Appellant,

v.

**Gordon and Janet SPENCER,**
Appellees.

No. 06–99–00126–CV.

Court of Appeals of Texas,
Texarkana.

Argued Dec. 11, 2000.

Decided Feb. 22, 2001.

Michael E. Flume, Munn & Flume, San Antonio, for appellant.

Juliette E. Daniels, Glast, Phillips & Murray, PC, Houston, for appellees.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

Gordon Spencer and his wife, Janet, brought suit against Materials Marketing Corporation (MMC), seeking recovery on claims of breach of contract, violations of the Deceptive Trade Practices–Consumer Protection Act (DTPA), and breach of warranty regarding their purchase of stone tiles sold by MMC. The jury found that MMC breached warranties under the DTPA, which resulted in damages in the amount of $24,000.00 to the Spencers.

MMC appeals on the theory that the finding of the jury that MMC was excused from its breach of contract should also result in no recovery for the Spencers under the breach of DTPA warranty. MMC also contends that a valid disclaimer of express and implied warranties was present in the contract that would render no recovery for the Spencers. Alternatively, MMC claims that the contract set out a limitation of damages.

The Spencers contracted with MMC through Flagship Construction, the builder and installer, to provide white adoquin

stone tile for the pool area and porch at the Spencers' residence. The Spencers had been provided with a tile sample and brochure, and had viewed applications of the stone before selecting a color. The tile was delivered in two shipments, in April 1992 and August 1992. The first shipment matched the sample and was acceptable to the Spencers. The second shipment, however, was a stone of a different color. Yet, this tile was installed by the Spencers without being rejected. In early 1993, the Spencers requested that MMC remedy the problem of the color variation. MMC removed samples of the mismatched tile and attempted to find a matching stone, but was unable to do so. The Spencers subsequently brought suit against MMC.

In submitting the case to the jury, the court's charge included five questions. The first question asked whether MMC breached its contract with the Spencers. The jury answered "yes." The second question, conditioned on an affirmative answer to the first question, asked if MMC's breach had been excused by the Spencers. The jury answered "yes." The third question asked if MMC had committed any DTPA "laundry list" violations. The jury answered "no." The fourth question asked if any failure by MMC to comply with a warranty (under the DTPA) was a producing cause of damages to the Spencers. The jury answered "yes." The fifth question, conditioned on an affirmative answer to questions one, three, or four, asked the jury to find damages. The jury answered "$24,000.00."

■ MMC contends that the affirmative answer to question two, finding that MMC's breach of contract had been excused by the Spencers, also excuses MMC's failure to comply with the warran-

ty created under the DTPA. However, breach of contract and breach of warranty are not the same cause of action. *Southwestern Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 576 (Tex.1991).[1]

■ The remedies for breach of contract are available where the seller fails to deliver or repudiates or the buyer rightfully rejects or revokes acceptance. TEX. BUS. & COM.CODE ANN. § 2.711(a) (Vernon 1994). The remedies for breach of warranty under the DTPA are found in entirely different sections of the Texas Code. TEX. BUS. & COM.CODE ANN. §§ 17.44, 17.50 (Vernon Supp.2001). Warranty actions by their nature will occur after acceptance of the goods. *Southwestern Bell*, 811 S.W.2d at 576; *see* TEX. BUS. & COM.CODE ANN. § 2.714 (Vernon 1994).

■ Breach of warranty claims are actionable under the DTPA. *Southwestern Bell*, 811 S.W.2d at 574. Claims for breach of warranty derive from common-law principles or by statute. *Id.* at 576. As this suit involves a sale of goods, Article 2 of the UCC provides the framework on the law of warranty. *See id.* at 576–77. A buyer's sole recovery after acceptance is for breach of warranty. *Glenn Thurman, Inc. v. Moore Constr., Inc.*, 942 S.W.2d 768, 772 (Tex.App.—Tyler 1997, no writ). Since TEX. BUS. & COM.CODE ANN. § 2.714 specifically authorizes recovery of damages after acceptance and provides the measure of damages for breach of warranty, the Spencers' acceptance of the goods did not excuse MMC's breach of warranty. Hence, the jury's finding that MMC's breach of contract had been excused has no effect on the jury's further finding that MMC failed to comply with a warranty.

1. The court in the *Southwestern Bell* decision saw a difference between breach of contract and breach of warranty under the Uniform Commercial Code (hereafter UCC), but the same rationale applies to a breach of warranty action under the DTPA.

MMC's contention to the contrary is overruled.

■ MMC next contends that a valid disclaimer of express and implied warranties was contained in the contract. This disclaimer is found on the back of the purchase invoice and is set off by the heading "DISCLAIMER OF EXPRESS AND IMPLIED WARRANTIES."

■ Under the DTPA, no waiver is allowed for a "laundry list" violation protecting consumers' statutory rights. TEX. BUS. & COM.CODE ANN. § 17.42 (Vernon Supp. 2001). However, an action for breach of warranty is not a creation of the DTPA. *Southwestern Bell,* 811 S.W.2d at 576. Breach of warranty claims derive from common-law principles or non-DTPA statutes, so these sources would have to be consulted in determining the validity of the disclaimer. *Id.* at 576–77. The UCC allows sellers to disclaim an implied warranty as long as certain prerequisites have been met. TEX. BUS. & COM.CODE ANN. § 2.316 (Vernon 1994); *Southwestern Bell,* 811 S.W.2d at 577. Such a disclaimer does not offend the "no waiver" provision in a DTPA breach of warranty action. *Southwestern Bell,* 811 S.W.2d at 577. The prerequisites require that the disclaimer of the implied warranty of fitness be in writing and be conspicuous. TEX. BUS. & COM. CODE ANN. § 2.316(b). To disclaim an implied warranty of merchantability, the language must mention the term "merchantability," and if it is in a writing, as it is in this suit, then it must be conspicuous. *Id.* A term or clause is designated as conspicuous if it is written so "that a reasonable person against whom it is to operate ought to have noticed it." TEX. BUS. & COM.CODE ANN. § 1.201(10) (Vernon Supp.2001). A printed heading in capitals is conspicuous. *Id.* But the determination of whether a term or clause is conspicuous is for the court. *Id.* In this case MMC never presented evidence that it submitted the invoice with the disclaimer to the Spencers or that the Spencers had any knowledge of the disclaimer. In its brief, MMC conceded that the agreement to provide the tile was between it and Flagship Construction, the builder. Flagship Construction subsequently sent a copy of only the front side of the invoice to the Spencers. The disclaimer cannot be conspicuous to the Spencers if they never received it.

■ By the bare standards provided in Section 2.316(b), MMC has conspicuously disclaimed any implied warranties on the form of the invoice. However, Section 2.316(a) is a viable form of relief when an express warranty is made that is inconsistent with an attempted disclaimer. *Singleton v. LaCoure,* 712 S.W.2d 757, 760 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Compliance with the statutory rules can act as a complete disclaimer only when implied warranties are alleged. *Id.* The situation in this case dealt with express warranties. Express warranties can be created by providing a sample. TEX. BUS. & COM.CODE ANN. § 2.313(a)(3) (Vernon 1994). MMC provided the Spencers with a stone tile sample, and this created an express warranty.

The fourth question posed to the jury stated:

Was the failure, if any, of Materials Marketing Corporation to comply with a warranty a producing cause of damages to Gordon and Janet Spencer?

"Producing cause" means an efficient, exciting, or contributing cause that, in a natural sequence, produced the damages, if any. There may be more than one producing cause.

"Failure to comply with a warranty" means any of the following:

a. Failing to comply with an express warranty. An express warranty

is any affirmation of fact or promise made by Defendant that relates to the goods or services and becomes part of the basis of the bargain. It is not necessary that formal words such as "warrant" or "guarantee" be used or that there be a specific intent to make a warranty; or

b. Furnishing goods that, because of a lack of something necessary for adequacy, were not fit for the ordinary purposes for which such goods are used.

■ The jury answered this question in the affirmative. It is unknown if the jury relied on the finding of an express warranty by MMC. Where a jury's findings are capable of two constructions and one would reconcile the findings in favor of the judgment, reconciliation is mandatory in favor of the judgment that was rendered on the jury verdict. *C.S.R., Inc. v. Indus. Mech., Inc.,* 698 S.W.2d 213, 215 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.). MMC's contention that its disclaimer of warranties should result in no recovery by the Spencers is overruled.

■ MMC finally contends that the contract set out a valid limitation of damages clause. This clause was on the back of the same invoice as the disclaimer that was sent to Flagship Construction. MMC also did not seek, nor object to the lack of, a question on damage limitation to the jury. MMC also presents no evidence that the Spencers had knowledge of such a provision or contracted for it.

■ Limitations of liability can be valid when a DTPA warranty has been violated. *Southwestern Bell,* 811 S.W.2d at 577. MMC relies on the *Southwestern Bell* case to uphold its claim to limit damages to the purchase price. The facts in *Southwestern Bell* are distinguishable from those in this case. In *Southwestern Bell* the contract at issue was for services. It was fully negotiated by the parties, who put it in writing and executed the contract with an express limitation of damages. *Id.* at 573, 576. In contrast, the limitation on which MMC relies is on the back of its preprinted invoice sent to Flagship Construction, not the Spencers. MMC has no evidence that it notified the Spencers of the limitation of damages. There is no evidence that the Spencers were aware that the invoice had a back side.

The Texas Code provides that "[d]amages for breach by either party may be liquidated in the agreement. . . ." TEX. BUS. & COM.CODE ANN. § 2.718 (Vernon 1994). This provision presumes that both parties are aware of the limitation of damages. Forcing this limitation on the Spencers without such knowledge or even consultation would go against the general policy behind the DTPA. TEX. BUS. & COM.CODE ANN. § 17.44. MMC's contention is overruled.

The judgment is affirmed.