# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00044-CV

**Roy Dale Leifester, Appellant**

**v.**

**Dodge Country, Ltd. and DaimlerChrysler Corporation, Appellees**

### FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
### NO. 205,428-B, HONORABLE RICK MORRIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Roy Dale Leifester appeals from "no evidence" summary judgments foreclosing his claims against Dodge Country, Ltd. and Daimler Chrysler Corporation. *See* Tex. R. Civ. P. 166a(I). We will affirm.

## BACKGROUND

On or about June 25, 2002, Leifester purchased a new Dodge Ram 2500 Quad truck from Dodge Country in Killeen. Daimler Chrysler represents that it had "assembled" the truck. To greatly simplify the underlying factual allegations, in December 2003 the truck's front-end differential locked-up or "froze," Leifester requested repairs, and a dispute arose concerning whether such repairs would be covered under Daimler Chrysler's seven-year "Powertrain Pledge Limited Warranty." The powertrain warranty provided:

> For You, the original purchaser of the vehicle only, the warranty will pay the total cost (parts and labor) less a $100 deductible per visit, to correct a mechanical failure caused by a defect in materials or workmanship of a "covered component" for 7 years after the factory warranty start date or until the vehicle odometer reads 100,000 miles, whichever occurs first.

The defendants, maintaining that the truck's problems were caused by a frontal collision or Leifester's abuse of the truck rather than "a defect in materials or workmanship," refused to pay for repairs under the warranty.

Leifester sued, asserting claims for common-law fraud, breach of contract, unconscionable action or course of action under the Deceptive Trade Practices Act (DTPA), and breach of warranties under the DTPA (express warranty and implied warranties of fitness for a particular purpose, good and workmanlike performance, and merchantability). Leifester sought as damages out-of-pocket expenses (including $32,451.99, representing the truck's purchase price and payments toward purchase), loss of use, lost profits, loss of credit, finance charges, "[l]oss of the 'benefit of the bargain,'" diminished market value, cost of repairs, and cost of completion, attorney's fees, and mental anguish and additional damages under the DTPA. Leifester also sought rescission of the contract under section 17.50(b)(3) of the DTPA and a declaratory judgment "[t]hat Plaintiff properly revoked his acceptance of the vehicle, and is entitled to a full refund of the purchase price of the vehicle."

After discovery, both defendants filed virtually identical no-evidence summary judgment motions. A chief contention was that Leifester could not prove elements of his claims predicated upon pre-sale communications or their effect because he had admitted in deposition that

he had decided independently to purchase a Dodge Ram 2500 Quad truck, ascertained that the dealership had one available, and proceeded to purchase it without relying on any representations or marketing materials from the defendants. The defendants also challenged elements predicated upon the existence of a mechanical defect in the truck for which they, rather than Leifester, were responsible. Leifester filed a single response to both motions.[1] He did not attempt to adduce evidence concerning pre-sale events but attempted to raise fact issues regarding the nature and origin of the truck's differential problems. The district court granted each motion in its entirety, ordering Leifester to take nothing on his claims. This appeal followed.

## DISCUSSION

Leifester brings three issues on appeal. In the first, he asserts that the district court erred in granting summary judgment as to each defendant regarding unconscionability under the DTPA, rescission under the DTPA, and "revocation of acceptance under [U.C.C.] section 2.608" because the defendants' motions did not adequately place these matters at issue. In his second and third issues, Leifester contends that the summary judgment evidence raises fact issues on, respectively, his claims for breach of the express warranty and breach of the implied warranty of merchantability.[2]

---

[1] He conceded that "their motions are identical."

[2] Leifester appears to assume that his issues apply identically to each defendant, and we will do the same.

3

Leifester explicitly "abandons the claims made under section 17.50(a)(1) *Texas Business and Commerce Code*, for fraud, breach of contract, breach of implied warranties of fitness for a particular purpose, and of good and workmanlike performance."

**S**tandard of review

A no-evidence summary judgment is essentially a pretrial directed verdict; thus, we apply the same legal sufficiency standard in reviewing the no-evidence summary judgment as we apply in reviewing a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750 (Tex. 2003); *Liberty Mut. Ins. Co. v. Texas Dep't of Ins.*, 187 S.W.3d 808, 819 (Tex. App.—Austin 2006, pet. denied); *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70 (Tex. App.—Austin 1998, no pet.). A no-evidence summary judgment is improperly granted if the non-movant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *See Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Cantu v. Texas Workforce Comm'n*, 145 S.W.3d 236, 239 (Tex. App.—Austin 2004, no pet.). A no-evidence issue will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). More than a scintilla of evidence exists if it would allow reasonable and fair-minded people to differ in their conclusions. *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003).

4

**Scope and specificity of summary judgment motions**

To obtain no-evidence summary judgment on a claim, the defendants were required to "state the elements as to which there is no evidence." *See* Tex. R. Civ. P. 166a(i) & cmt. ("The motion must be specific in challenging the evidentiary support for an element of a claim or defense; paragraph (i) does not authorize conclusory motions or general no-evidence challenges to an opponent's case."). In addition, the district court could not grant summary judgment on grounds not expressly raised in defendants' summary judgment motions, *see, e.g.*, *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 204 (Tex. 2002); *Chessher v. Southwestern Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983); *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 469 n.15 (Tex. App.—Austin 2004, pet. filed), and Leifester would have had no obligation to present evidence regarding claims not specifically challenged. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex. 1993). Leifester contends that the defendants' motions failed to specify the elements of his DTPA unconscionability claim for which they asserted that no evidence existed and wholly failed to challenge his "claims" for rescission and revocation of acceptance. We disagree.

### *Unconscionability*

To recover on his unconscionability claim, Leifester had to prove (1) an "unconscionable action or course of action" that violated the DTPA; (2) that was a producing cause of actual damages. *See* Tex. Bus. & Com. Code Ann. § 17.50(a)(3) (West Supp. 2006); *Latham v. Castillo*, 972 S.W.2d 66, 68-69 (Tex. 1998). "Unconscionable action or course of action" is defined as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge,

5

ability, experience, or capacity of a person to a grossly unfair degree." Tex. Bus. & Com. Code Ann. § 17.45(5) (West 2002).

In their summary judgment motions, the defendants specifically challenged the evidence supporting the "unconscionable action or course of action" element of Leifester's unconscionability claim: "the Plaintiff has failed to produce any evidence that [defendant] engaged in an unconscionable act or course of action." *Id*. § 17.50(a)(3). The defendants then elaborated on, with regard to all of Leifester's DTPA claims, Leifester's admissions that he had not relied on any representations or marketing materials in his decision to purchase the truck but "knew exactly which vehicle he wanted before he arrived at Dodge Country's lot." We hold that the defendants adequately stated the elements of Leifester's DTPA unconscionability claim as to which they claim there is no evidence. *See* Tex. R. Civ. P. 166a(i); *see also Latham*, 972 S.W.2d at 68-69 (Tex. 1998).[3]

---

[3] We also note that Leifester did not raise this complaint in the district court. We have previously held, in an unpublished opinion, that an exception or objection in the trial court is required to preserve error on a complaint that a no-evidence summary judgment motion fails to comply with the specificity requirement of rule 166a(i). *See Barnes v. Sulak*, No. 03-01-00159-CV, 2002 Tex. App. LEXIS 5727, at *26 n.4 (Tex. App.—Austin Aug. 8, 2002, pet. denied) (not designated for publication) (citing *Walton v. Phillips Petroleum Co.*, 65 S.W.3d 262, 268 (Tex. App.—El Paso 2001, pet. denied); *Williams v. Bank One, Tex., N.A.*, 15 S.W.3d 110, 117 (Tex. App.—Waco 1999, no pet.); *Roth v. FFP Operating Partners, L.P.*, 994 S.W.2d 190, 194-95 (Tex. App.—Amarillo 1999, pet. denied)); *see also Sanders v. Capitol Area Council, BSA*, 930 S.W.2d 905, 910 (Tex. App.—Austin 1996, no writ) (holding that, as a general rule, a non-movant "must except to the lack of specificity or waive the error" but also holding that a non-movant "does not have a duty to except to a ground not presented in the motion but which the movant might have relied on as a ground for summary judgment"). There is a split of authority on this issue, with several courts holding that a non-movant may raise a defect in a no-evidence motion—including a failure to specify the elements being challenged—for the first time on appeal. *See, e.g.*, *In re Estate of Swanson*, 130 S.W.3d 144, 147 (Tex. App.—El Paso 2003, no pet.); *Cuyler v. Minns*, 60 S.W.3d 209, 212-14 (Tex. App.—Houston [14th Dist.] 2001, pet. denied); *Callaghan Ranch, Ltd. v. Killam*,

### *Rescission and revocation of acceptance*

The defendants' motions do not mention Leifester's "claims" for rescission or revocation of acceptance. Defendants urge that they were not required to explicitly address rescission or revocation of acceptance in their motions because they are not independent *claims* but only *remedies* for Leifester's claims. We agree with defendants that they were not required to explicitly address rescission or revocation of acceptance in their motions in order to obtain summary judgment on Leifester's claims.

Leifester pleaded for rescission "[p]ursuant to Section 17.50(b)(3) of the Texas Business and Commerce Code." Rescission is one of the remedies available under a DTPA claim, not an independent cause of action. *Compare* Tex. Bus. & Com. Code Ann. § 17.50(a) (claims that can be maintained under the DTPA), *with id.* § 17.50(b) (relief, including rescission, is available to consumers who prevail in an action under that section). To obtain no-evidence summary judgment on Leifester's DTPA claims, rule 166a(i) required defendants only to specify "one or more essential elements of a *claim*" for which there is no evidence. It did not require defendants to specifically attack each remedy Leifester sought in the event he prevailed on his claims (e.g., rescission or money damages). Alternatively, any error in this regard would be harmless because any defect in defendants' motions regarding a mere remedy could not defeat their summary judgment entitlement if, as the district court found, there was no evidence to support one or more essential elements of Leifester's causes of action.

---

53 S.W.3d 1, 3 (Tex. App.—San Antonio 2000, pet. denied). We need not address this question here.

Similarly, while Texas courts sometimes make shorthand references to a "claim" for "revocation of acceptance,"[4] it is, at least under Leifester's pleadings, merely a component of Leifester's breach-of-contract claim. Section 2.608 of the U.C.C. provides that a buyer may:

> revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it
>
> > (1) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or
> >
> > (2) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

*Id*. § 2.608(a) (West 1994).[5] "Non-conformity" is defined in terms of the contract of sale: goods are "'conforming' or conform to the contract when they are in accordance with the obligations under the contract." *Id*. § 2.106(b) (West 1994). Whether a buyer has the right to revoke his acceptance impacts the kinds of damages he may recover for breach when goods are non-conforming. A buyer who rightfully rejects goods before acceptance or justifiably revokes his acceptance may recover breach-of-contract remedies for delivery of non-conforming goods under section 2.711 of the U.C.C., including recovery of the purchase price and damages for non-delivery. *Id*. § 2.711(a) (West 1994).

---

[4] *See, e.g.*, *Satre v. Dommert*, 184 S.W.3d 893, 900 (Tex. App.—Beaumont 2006, no pet.); *Ford Motor Co. v. Cooper*, 125 S.W.3d 794, 800 (Tex. App.—Texarkana 2004, no pet.); *Neal v. SMC Corp.*, 99 S.W.3d 813, 815 (Tex. App.—Dallas 2003, no pet.); *Neily v. Aaron*, 724 S.W.2d 908, 910 (Tex. App.—Fort Worth 1987, no writ).

[5] Such revocation "must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in the condition of the goods which is not caused by their own defects" and "is not effective until the buyer notifies the seller of it." Tex. Bus. & Com. Code Ann. § 2.608(b) (West 1994). "A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them." *Id.* § 2.608(c).

8

By contrast, if the buyer has accepted the goods, he may recover breach of warranty damages generally measured by the difference, at the time and place of acceptance, between the value of the goods accepted and the value they would have had if they had been as warranted, plus incidental and consequential damages. *Id.* § 2.714 (West 2002); *see also Southwestern Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 576 (Tex. 1991) (explaining that remedies for breach of warranty are only available after buyer has finally accepted goods); *Emerson Elec. Co. v. American Permanent Ware Co.*, 201 S.W.3d 301, 310 (Tex. App.—Dallas 2006, no pet.) ("A buyer who rightfully rejects the goods or justifiably revokes his acceptance may recover breach of contract remedies for delivery of non-conforming goods under section 2.711."); *Selectouch Corp. v. Perfect Starch, Inc.*, 111 S.W.3d 830, 834 (Tex. App.—Dallas 2003, no pet.) ("[T]he critical factor in whether the buyer has a breach of contract or a breach of warranty claim is whether the buyer has finally accepted the goods."); *Materials Mktg. Corp. v. Spencer*, 40 S.W.3d 172, 174 (Tex. App.—Texarkana 2001, no pet.) ("A buyer's sole recovery after acceptance is for breach of warranty.").

In his petition, Leifester pleaded for a declaratory judgment that "Plaintiff properly revoked his acceptance of the vehicle, and is entitled to a full refund on the purchase price of the vehicle." *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004 (West 1997). Read in context, this "revocation of acceptance" allegation concerns a mere component of Leifester's breach-of-contract claim and the damages recoverable under it. *Emerson Elec. Co.*, 201 S.W.3d at 310 (revocation of acceptance issue "was not an independent ground of recovery; it was a component of [the] breach of contract claim and necessarily referable to it."); *see also Cooper v. Lyon Fin. Servs.*, 65 S.W.3d 197, 205 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (revocation of acceptance is defense to

9

breach-of-contract claim). Leifester has waived his breach of contract claim. To the extent Leifester's revocation of acceptance pleading might relate to his remaining warranty claims, the defendants have challenged other elements of Leifester's breach of warranty claims that provide independent grounds to support summary judgment.

We overrule Leifester's first issue.

**Summary judgment evidence**

In his second and third issues, Leifester contends that he brought forth more than a scintilla of probative evidence raising genuine issues of material fact that defendants breached the express powertrain warranty and the implied warranty of merchantability.

To prevail on his breach of express warranty claim, Leifester was required to prove that the powertrain warranty covered repair of the truck's differential problems, which required proof that (1) the truck had "a defect in materials or workmanship" that (2) caused the "mechanical failure" in question. To demonstrate that he met this burden, Leifester points to his own affidavit and that of Danny Dunn, the owner of a Killeen transmission repair shop. In relevant part, Leifester testified that "Dodge Country claimed it [the truck] had hit a rock and I had abused it, even before anyone looked at it," and that "I never abused the truck, and it was never hit by a rock." Dunn testified that he possessed 20 years' experience "repairing automobile and truck transmissions and drive-trains" and that "I am familiar with Dodge power-trains and have repaired them on many occasions." Regarding the cause of Leifester's differential problems, he explained:

> I examined the front differential of Roy Dale Leifester's 2002 Dodge Ram 2500 pickup truck. It did not have any outer damage to the cover or housing. It is my

10

opinion that vibration caused the front pinion seal to fail, leaking out lubricant which in turn caused the front pinion bearing to fail, causing major damage to the internal parts. I did not see any damage to the under side of the truck that would indicate the vehicle had been wrecked or abused.

Neither witness identified a "defect in material or workmanship" in the truck, much less explained how such a defect caused the differential problems Leifester experienced. Dunn does posit that the problems were caused by a chain reaction—"vibration" occurred, causing a pinion seal to leak, causing the front pinion to fail, etc.—but does not explain whether or how any of these events were caused by a product defect. *See Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 807 (Tex. 2006) ("Texas law does not generally recognize a product failure standing alone as proof of a product defect."); *see also McIntyre v. Ramirez*, 109 S.W.3d 741, 749 (Tex. 2003); *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997). We overrule Leifester's second issue.

The absence of evidence of a defect is likewise fatal to Leifester's claim for breach of the implied warranty of merchantability. That claim is based on U.C.C. section 2.314, which provides that a seller of goods impliedly warrants that they "are fit for the ordinary purposes for which such goods are used." Tex. Bus. & Com. Code Ann. § 2.314(b)(3) (West 1994). For goods to breach the implied warranty of merchantability, they must be defective—that is, they must be "unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy." *GMC v. Brewer*, 966 S.W.2d 56, 57 (Tex. 1998) (quoting *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 443-44 (Tex. 1989)); *Polaris Indus. v. McDonald*, 119 S.W.3d 331, 336 (Tex. App.—Tyler 2003, no pet.). Furthermore, the goods must have been defective at the time they left the manufacturer's or seller's possession. *Plas-Tex, Inc.*, 772 S.W.2d at 444; *Chandler v. Gene*

11

*Messer Ford, Inc.*, 81 S.W.3d 493, 502 (Tex. App.—Eastland 2002, pet. denied); *Hyundai Motor Co. v. Chandler*, 882 S.W.2d 606, 613 (Tex. App.—Corpus Christi 1994, writ denied). Because Leifester has failed to raise a fact issue regarding the existence of a defect, the district court did not err in granting summary judgment as to this claim.[6] We overrule Leifester's third issue.

## CONCLUSION

Having overruled Leifester's issues on appeal, we affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Waldrop

Affirmed

Filed:   February 1, 2007

---

[6] Leifester devotes most of his briefing on this issue to whether the implied warranty of merchantability had been excluded or modified by the express warranty. However, defendants did not assert this as a no-evidence summary judgment ground but indicated only that they would assert it, if necessary, in a subsequent traditional motion.